BARTHOLD SCHLESINGER ET AL., Respondents, *v.* TEXAS AND ST. LOUIS RAILROAD COMPANY, Appellant.

### March 27, 1883.

1. AGENCY — BROKER. — A broker may be the agent of both parties to a sale for the purpose of signing a memorandum of the sale, but in other respects he is the agent only of the person employing him.
2. —— PRACTICE. — The question of agency is one for the jury, and their finding is conclusive as to the fact.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Affirmed.*
PHILLIPS & STEWART, for the appellant.
J. H. WIETING, for the respondents.

BAKEWELL, J., delivered the opinion of the court.

This was an action for moneys expended by plaintiffs for defendant in the matter of insuring a cargo of rails.    On the trial, there was no controversy as to the claim of plaintiffs. The dispute is as to the counter-claim of defendant, which

claims damages for the failure of plaintiffs to punch according to defendant's directions, the rails that defendant had bought of them.    There was a verdict in favor of plaintiffs, and against the counter-claim, and judgment accordingly.

It appears from the evidence, that one Thorne was a broker in New York.    Paramore was the president of defendant, a railway corporation, and plaintiffs were manufacturers and importers of rails in New York, under the name of Naylor & Co.

In February, 1880, Paramore was in New York, and Thorne inquired of him whether his road was in the market for rails.    Paramore let Thorne know that he would receive an offer, and Thorne then got their prices from plaintiffs. There was some correspondence between Thorne and Paramore, and at last they agreed upon terms, and Paramore agreed to purchase four thousand tons of rails.    Paramore says that he did not employ Thorne to inquire the price of rails, but supposed that he was purchasing the rails of Thorne as principal.    He says that he had no other idea about the matter until he was asked by Thorne to furnish the letter of credit for the payment of the iron in the name of plaintiffs.    Thorne then took Paramore to plaintiffs' place of business and introduced him to one of the firm. On the 3rd of March, Thorne drew up a paper, setting forth the terms of the contract.    It is written on one of Thorne's letter-heads, and begins: "Sold for Naylor & Co. to the Texas and St. Louis Railway Co., *per* J. W. Paramore, Esq., president," and is signed, "Charles T. Thorne." One of these memoranda was delivered to Paramore.    On another paper, identical with the first, Paramore wrote : "Accepted, March 15, 1880, Texas and St. Louis Railway Co., by J. W. Paramore, president."    This paper, with the acceptance, was delivered by Paramore to Naylor & Co.

On March 25th, the plaintiffs, in consequence of dispatches from Europe, where the rails were being made, asked Thorne for instructions as to how they were to be

punched.    On March 27th, Thorne wrote to plaintiffs giving
directions as to punching the rails, which he says in this
letter are the directions he has received from Paramore by
mail.    Thorne had written to Paramore on March 20th, for
directions as to punching.    Paramore requested the presi-
dent of the Bolt and Iron Company to send on these direc-
tions ; and, on March 26th, this gentleman mailed a letter to
Thorne with these directions.    Unless there is some mis-
take in the date of these communications, Thorne seems to
have written for directions before he was asked to do so by
plaintiffs; and, as Paramore was in St. Louis, Thorne must
have given the directions before receiving the directions con-
tained in the letter of the 26th.

However that may be, there was testimony tending to
show that the directions as to punching given by Thorne
were not the same as those that he received from St. Louis.
As to this there is some conflict of evidence.    The rails
were punched according to Thorne's directions ; and there
is evidence tending to show that the rails were wrongly
punched, and that defendant was damaged $10,000 by the
mistake.

The case was given to the jury upon the following
instructions, of which the first three were given at the in-
stance of plaintiffs, and the rest at the instance of defend-
ant : —

1. "The court instructs the jury, that under the plead-
ings and evidence in this case, it is their duty to find for the
plaintiffs, on the cause of action stated in their petition, in
the sum of $909.25, with interest on said sum at the rate of
six per cent per annum from June 15, 1880."

2. "The court instructs the jury, that when defendant,
by its president, accepted the terms of the contract read in
evidence, under date of March 15, 1880, it then and there
agreed, among other things, to furnish to the plaintiffs, on
request, the necessary directions for the ' punching ' of these
rails ; and if the jury believe that defendant subsequently

undertook to send and did send the required directions to plaintiffs, through one Charles F. Thorne, and that plaintiffs caused said rails to be 'punched' as directed by said Thorne, then defendant is not entitled to recover on its counter-claim, unless they shall further find that said Thorne was the agent of plaintiffs in said transactions."

3.  "The court instructs the jury, that a broker, for the purpose of signing bought and sold notes, is the agent of each and both of the parties to the contract which he makes ; but, in all other respects, he is and remains the agent of the party who originally employs him.  If, therefore, the jury find, in this case, that defendant first employed the broker, Mr. Thorne, or first set him in motion on the business involved in this controversy, they are instructed that he was and remained the agent of defendant, so far as any agency resulted from the above facts, and that any mistakes he may have made in conveying to plaintiffs the directions of defendant as to the manner of 'punching' these rails, are the mistakes of defendant's own agent, and that plaintiffs are not responsible therefor."

4.  "The court instructs the jury, that if they shall believe from the evidence that plaintiffs sold to defendant two thousand tons of iron rails, which by the terms of the contract were to be punched and notched in a particular manner, according to directions to be given by defendant, and that afterwards, and before said rails were delivered, such directions for punching and notching the same were furnished by defendant to plaintiffs, or to plaintiffs' agent, and that the two thousand tons were punched and notched in a manner different from that which was directed by defendant, and so were delivered to defendant, then defendant is entitled to recover from plaintiffs the difference in value between the rails as punched and as they should have been punched, under the directions given by defendant to plaintiffs, or their agent, not to exceed the amount sued for by defendant in the counter-claim filed in this cause."

5. "The court instructs the jury, that if they believe from the evidence that plaintiffs sold to defendant the two thousand tons of iron rails mentioned in the pleadings, through one Charles F. Thorne, and that he was at the time, and in making such sale, acting as agent of the plaintiffs, and made said sale as the agent of plaintiffs, and that afterwards, and while said iron rails were being made, the defendant furnished to said Thorne, — if the jury believe that the said Thorne was, at the time the specifications were furnished, the agent of plaintiffs, — the specifications and instructions for notching and punching said rails, when the same were called for by him, that said Thorne was still acting as the agent of plaintiffs, in respect to said sale of iron rails, then defendant had a right to treat said Thorne as the agent of plaintiffs, in respect to said contract, and the furnishing the directions for notching and punching said rails, if they were so furnished, was a compliance with the terms of the contract on the part of defendant requiring defendant to furnish directions for punching and notching said rails."

6. "The court instructs the jury, that if they believe from the evidence that Charles F. Thorne was the agent of plaintiffs in regard to the two thousand tons of iron rails, at the time he wrote the letters of date March 20, 1880, and March 29, 1880, read in evidence, then the same are competent evidence to go before you as declarations of the said agent, so far as they refer to the sale, punching, and notching of the rails, and are also competent evidence as to the knowledge of said agent concerning instructions given by defendant to him in regard to said punching and notching of said rails."

An instruction asked by defendant, to the effect that, "if the jury believe from the evidence that Thorne sold the rails to defendant on account of plaintiffs, under a written contract specifying the terms of sale, which contract was approved by plaintiffs, signed by Thorne, and afterwards ac-

cepted by defendant, and the original then delivered to plaintiffs, the defendant had a right to regard Thorne as the agent of plaintiffs in respect to the contract and the carrying out of the same," was refused.

If Thorne was a mere broker, although he might represent both parties in making the memorandum of sale, he is to be held as representing, in other matters growing out of the transaction, only the person originally employing him. Whart. on Ag., sect. 715. It was for the jury to say whether Paramore employed Thorne as a broker, or dealt with him as a principal. The evidence is, that he was known in New York as a broker; and the transaction was so large a one, that, in the absence of direct testimony to the contrary, there would be a strong presumption that the president of defendant knew with whom he was dealing, and in what capacity. But if Paramore first dealt with Thorne as a principal, the plaintiffs might naturally suppose that, in point of fact, he had been dealt with as a broker originally employed by Paramore. We do not see any evidence that they originally employed Thorne. He did not apply to them to get their prices until he had been told by Paramore to offer a bid for the rails. If Thorne was the agent of defendant, he could not be the agent of plaintiff in the transaction, except as to making the memorandum of sale, because the interests of buyer and seller are opposed. If the plaintiffs knew Thorne, in the transaction, only as the broker of defendant, they can hardly be said to have constituted him their agent by applying to him to get directions from defendant as to punching the rails. When this application was made, Paramore knew, as he had known from the date that he was applied to for a letter of credit, that Thorne had been acting in the matter, not as a principal, but as a broker.

The question of agency was left to the jury on instructions which were not unfair to the defendant. We are not to reverse the case because the court did not give further

instructions of its own motion, even if we may think that the jury might have been helped by some further direction. It cannot be said that there is no evidence to support the verdict; and we see no sufficient ground for disturbing the judgment. Plaintiffs obeyed instructions which they believed to come from defendant. Unless Thorne, who received and communicated those instructions, was the agent of plaintiffs, and not the agent of defendant, it is difficult to perceive any theory upon which defendant can hold plaintiffs liable for the mistake in those instructions which led to defendant's loss.

The judgment is affirmed.   All the judges concur.